**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| SARI ABOU AMRA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 6:26-cv-03322-MBB |
| | ) | |
| CASS MARTIN, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Petitioner Sari Abou Amra petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241. He argues that DHS erred when it revoked his supervised release. (**Doc. 1**, pp. 23-24). And he argues that he is wrongfully detained in violation of the Constitution. (***Id.*** at pp. 21-23). He asks the Court to order Respondents (collectively, the "Government") to immediately release him. (***Id.*** at p. 25). Because Petitioner's detention does not violate the Immigration and Nationality Act (the "INA") or due process, and because relief is not available under the Administrative Procedure Act (the "APA"), the petition is DENIED.

### Background

"Petitioner, who was born in Libya, later lived in Qatar, and is of Palestinian descent, is presently stateless." ***Amra v. Olson***, 2025 WL 3684264, at *1 (D. Kan. Dec. 19, 2025). He entered the United States with a tourist visa in 2000. (**Doc. 1-1**, p. 2); (**Doc. 1-7**, p. 6). He applied for asylum, which was denied. (**Doc. 11-1**, p. 2). He overstayed his visa and DHS initiated removal proceedings. (***Id.***). On November 19, 2002, an immigration judge granted Petitioner's request for voluntary departure, ordering him to depart the United States on his own accord. (**Doc. 1-1**, p. 2); (**Doc. 11-1**, p. 3). The immigration judge entered an alternate removal order to Qatar

should Petitioner violate the voluntary departure order.  (**Doc. 1-1**, p. 2); (**Doc. 11-1**, p. 3). Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals (the "BIA").  (**Doc. 1-1**, p. 2); (**Doc. 11-1**, p. 3).  The BIA dismissed the appeal.  (**Doc. 1-1**, p. 2); (**Doc. 11-1**, p. 3); (**Doc. 1-6**, p. 2).  Petitioner filed a motion to reopen and reconsider, which the BIA denied on June 9, 2004.  (**Doc. 1-1**, p. 2); (**Doc. 11-1**, p. 3).  Petitioner failed to depart the United States, transforming the voluntary departure order into a final removal order to Qatar.  (**Doc. 11-1**, p. 3).  On April 1, 2005, Petitioner was placed on an order of supervision, requiring periodic reporting and imposing travel restrictions.  (**Doc. 1-1**, p. 2); (**Doc. 1-3**, p. 2).

On June 4, 2025, DHS determined that Petitioner is inadmissible under 8 U.S.C. § 1182(a)(9) because of the removal order.  (**Doc. 1-8**, p. 6).  DHS revoked his order of supervision, arrested him, and detained him without bond under 8 U.S.C. § 1231.  (**Doc. 11-1**, pp. 3-4). Beginning on June 19, DHS attempted to remove Petitioner to Qatar, Libya, Egypt, and the Palestinian Territories.  (*Id.* at p. 4).  Petitioner refused to cooperate.  (*Id.* at pp. 4-5); (**Doc. 1-4**, p. 2).  On July 25, 2025, Libya refused to accept Petitioner because he is not a Libyan citizen. (**Doc. 11-1**, p. 5).  On September 25, 2025, Petitioner again refused to comply with removal efforts, delaying travel document submission to the Palestinian Authority.  (*Id.*).  On November 12, 2025, Egypt refused to accept Petitioner.  (*Id.* at p. 6).  The Egyptian embassy explained that although Petitioner "holds a travel document issued by Egyptian authorities," he is not an Egyptian national. (*Id.*).  On November 17, 2025, Qatar refused to accept Petitioner because he is not a Qatari citizen. (*Id.*).  Despite Petitioner's failure to cooperate, DHS continues to pursue removal to the Palestinian Territories.  (*Id.*).  On June 11, 2026, DHS, in conjunction with the State Department, pursued Petitioner's removal to a "third country" under state-level agreements "to accept aliens under final

2

orders of removal from the United States." (***Id.*** at pp. 6-7). Petitioner meets the relevant nominating criteria, and DHS is awaiting "final acceptance confirmation." (***Id.*** at p. 7).

After his arrest in June 2025, Petitioner filed another motion to reopen proceedings with the BIA, which is pending. (***Id.*** at p. 5). On October 14, 2025, he filed a petition for a writ of habeas corpus in the United States District Court for the District of Kansas, where he was then confined. (***Id.***); ***Amra***, 2025 WL 3684264. He argued that his detention violated the INA and due process, citing the Supreme Court's opinion in *Zadvydas v. Davis*, 533 U.S. 678 (2001). ***Amra***, 2025 WL 3684264, at *1. On December 19, 2025, that court denied the petition, citing Petitioner's failure to comply with removal efforts. ***Amra***, 2025 WL 3684264, at *2. That court also noted DHS's "numerous and ongoing attempts to obtain a travel document for [Petitioner] (despite [his] refusal to cooperate with respect to any such applications)." ***Id.*** at *2.

On June 5, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 with this Court. (**Doc. 1**). He again argues that his detention violates the INA and due process, citing *Zadvydas*. (***Id.*** at p. 22). He also argues that DHS's revocation of his order of supervision violated procedural due process and the APA. (***Id.*** at pp. 23-24).

### Discussion

28 U.S.C. § 2241 gives federal courts jurisdiction to hear constitutional challenges to the legality of immigration-related detention. *See **Zadvydas v. Davis***, 533 U.S. 678, 687 (2001). *See also **Rasul v. Bush***, 542 U.S. 466, 483-84 (2004) (holding that Section 2241 conferred jurisdiction to hear a challenge to an alien's detention). But "[d]istrict Courts in this circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful." ***Vargas Lopez v. Trump***, 802 F. Supp. 3d 1132, 1137 (D. Neb. 2025); ***Johnson v. Mabry***, 602 F.2d 167, 171 (8th Cir. 1979) ("Generally,

3

the burden of proof in a habeas corpus proceeding is on the petitioner to establish by a preponderance of the evidence that he is entitled to relief.").

Petitioner fails to carry that burden. He has not provided "good reason" to believe that his removal is not significantly likely in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. His detention does not violate his right to substantive due process. The Government did not violate his right to procedural due process when it revoked his supervised release. And his APA claim is misplaced.

## I.     Petitioner's detention does not violate the INA because he has not provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Though Section 1231 permits detention of aliens deemed inadmissible under Section 1182, "[i]t does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. So the Court asks whether the detention "exceeds a period reasonably necessary to secure removal." *Id.* The Court measures reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* The review considers "the greater immigration-related expertise of the Executive Branch," and "Executive Branch primacy in foreign policy matters." *Id.* at 700. Detention for six months is presumptively authorized. *Id.* at 701. After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Petitioner's first habeas petition was denied in part because he failed to cooperate with removal efforts. *See Amra*, 2025 WL 3684264, at *2. His non-cooperation continues, which "undermine[s] any argument that [he] has been detained longer than needed to effectuate his removal." *Id.*; *Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("The risk of indefinite

detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention."). Regardless, the Government's recent inter-agency effort to remove Petitioner to a third country, and DHS's confirmation that Petitioner meets the nominating criteria for such removal, indicate that his removal is reasonably foreseeable. Petitioner offers no evidence to the contrary. He has not met his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. *See also **Joseph v. United States***, 127 F. App'x 79, 81 (3d Cir. 2005) (per curiam) (holding that a petitioner failed to show good reason to believe there was no significant likelihood of removal where he offered no evidence that travel documents would not issue).

## II. Petitioner's detention does not violate substantive due process because it does not implicate a fundamental right.

Substantive due process "forbids the government to infringe certain fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." **Reno v. Flores**, 507 U.S. 292, 302 (1993) (emphasis in original) (internal quotation marks omitted). Fundamental liberty interests "are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." **Minnesota Deer Farmers Ass'n v. Strommen**, 146 F.4th 664, 670 (8th Cir. 2025) (internal quotation marks omitted). A petitioner must provide a "careful description of the asserted fundamental liberty interest." **Washington v. Glucksberg**, 521 U.S. 702, 721 (1997). If a liberty interest is not fundamental, statutory regulation of the interest must only be "rationally related to legitimate government interests" to pass constitutional muster. *See **id.*** at 728.

5

True, freedom from imprisonment "lies at the heart of the liberty [the Due Process Clause] protects." ***Zadvydas***, 533 U.S. at 690. But "Congress may make rules as to aliens that would be unacceptable if applied to citizens." ***Id.*** at 522. "A wide range of discretion in the Attorney General as to bail is required to meet the varying situations arising from the many aliens in this country." ***Carlson v. Landon***, 342 U.S. 524, 543 (1952).

Here, Petitioner does not provide a "careful description of the asserted fundamental liberty interest." *See* ***Glucksberg***, 521 U.S. at 721. Regardless, aliens ordered removed have no fundamental liberty interest in release pending deportation. Such a right is not "deeply rooted in this Nation's history and tradition." *See* ***Minnesota Deer Farmers***, 146 F.4th at 670; ***Romero v. Brown***, 2026 WL 1021455, at \*7 (S.D. Iowa Apr. 15, 2026) ("The right he actually asserts—release into the country without lawful admission pending removal—is not deeply rooted in this Nation's history and tradition.") (internal quotation marks omitted). Petitioner's detention is rationally related to the legitimate government interest of "assuring [his] presence at the moment of removal." *See* ***Zadvydas***, 533 U.S. at 699.

III. **The Government's revocation of Petitioner's order of supervision did not violate procedural due process because the INA permitted it.**

An inadmissible alien "has no entitlement to procedural rights other than those afforded by statute." *See* ***Department of Homeland Security v. Thuraissigiam***, 591 U.S. 103, 107 (2020); ***Baynee v. Garland***, 115 F.4th 928, 932 (8th Cir. 2024) (holding that removable aliens may be detained pending deportation "simply by reference to the legislative scheme"). Section 1231 does not discuss revocation of supervised release for aliens ordered removed. *See* **8 U.S.C. § 1231(a)(3)**. It merely directs the Attorney General to create regulations governing the parameters of release. ***Id.*** But those regulations give DHS broad discretion to revoke supervised release. *See* **8 C.F.R. § 241.4(l)(2)**. Petitioner claims he was entitled to notice and a hearing before the

6

Government revoked his supervised release.  But he cites no statutory or regulatory authority requiring those procedural steps.  The INA gives the Government discretion to revoke supervised release.  Procedural due process requires no more.

**IV.    Petitioner's APA claim fails because he has an adequate remedy in court.**

The APA only "provides for review of a final agency action for which there is no other adequate remedy in a court."  *See Union Pac. R.R. Co. v. United States R.R. Ret. Bd.*, 162 F.4th 908, 917 (8th Cir. 2025).  The "no other adequate remedy" requirement ensures "that the APA's general grant of jurisdiction to review agency decisions is not duplicative of more specific statutory procedures for judicial review."  *Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.").  Alien detainee claims challenging the validity of their confinement "fall within the core of the writ of habeas corpus and thus must be brought in habeas."  *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (internal quotation marks omitted) (holding that APA claims and habeas claims follow different litigation paths).  *See Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973) (holding that habeas corpus is "the specific instrument to obtain release" from unlawful confinement).

Here, even if Petitioner challenges a final agency action, this petition provides judicial review of the Government's decision to revoke his release and detain him.  As discussed, 28 U.S.C. § 2241 gives federal courts jurisdiction to hear constitutional challenges to the legality of immigration-related detention.  *See Zadvydas*, 533 U.S. at 687.  So there is an "adequate remedy in court," which precludes Petitioner's APA claim.  *See Union Pac. R.R.*, 162 F.4th at 917.  *See also Dominguez v. Mordant*, 2026 WL 1098252, at *3 (M.D. Fla. Apr. 23, 2026) (prohibiting a petitioner from "[t]rying to shoehorn a freestanding APA challenge into a habeas petition");

7

*Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (holding that a petition for habeas corpus may not be converted to a civil suit, which has many procedural differences).

### Conclusion

Petitioner's continued detention does not violate the INA or due process. The Government's revocation of his supervised release did not violate his right to procedural due process. And his APA claim is misplaced. The Petition for a Writ of Habeas Corpus is DENIED.

**IT IS SO ORDERED.**

/s/ Megan Blair Benton
MEGAN BLAIR BENTON
UNITED STATES DISTRICT JUDGE

Dated: July 31, 2026

8